UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIDGET STEWART,

                         Plaintiff,

v.

WAYNE COUNTY PROBATE
COURT, et al.,

                         Defendants.

_____/

Civil Action No. 23-12296

Susan K. DeClercq
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS (ECF No. 39)

The plaintiff in this case, Bridget Stewart ("Stewart"), has worked for defendant

Wayne County Probate Court ("WCPC") for many years.  She remains employed there,

but, on September 8, 2023, she instituted the present action against the WCPC[1] and certain

_____

[1] In their motion, Defendants assert that in her initial complaint, Stewart improperly named Wayne County Probate Court as a defendant because "[a] Probate Court is immunized from suit because it is not itself a legal entity capable of being sued."  (ECF No. 39, PageID.284) (citing *Bridges v. Senger*, 730 F. Supp. 1401, 1408 (6th Cir. 1990).  The Court need not resolve that issue because, in her amended complaint, Stewart named Wayne County as a defendant in place of the WCPC. (ECF No. 37).  Defendants' only argument for dismissal of Wayne County is that any claims against Wayne County should be dismissed because, under Fed. R. Civ. P. 25, "a motion is required for a Plaintiff to substitute parties within a case." (ECF No. 39, PageID.284).  That argument lacks merit.  First, Rule 25 is inapplicable here because it applies only in certain situations, such as where "a party dies" or "becomes incompetent," or where "an interest is transferred" that affects the claims in a case.  Fed. R. Civ. P. 25.  Second, the Federal Rules of Civil Procedure specifically contemplate adding new parties through an amended complaint, as Stewart has done here.  Fed. R. Civ. P. 15(c)(1)(C).  Accordingly, Defendants' motion to dismiss should be denied without prejudice as to defendant Wayne County.

The Court does note, however, that serious questions exist as to Wayne County's propriety as a defendant.  *See e.g.*, *Est. of Housey ex rel. Housey v. Macomb Cnty.*, No. 10-11445, 2012 WL 1694629, at *9 (E.D. Mich. May 15, 2012), *aff'd sub nom. Housey v. Macomb Cnty.*, 534 F. App'x

of its employees (collectively "Defendants") claiming that she was wrongfully demoted

(or not promoted), and paid less than certain of her colleagues based on her race and age.

Thus, Stewart asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29

U.S.C. § 621 *et seq.*  She also asserts claims for harassment, bullying, and retaliation.

Presently before the Court is Defendants' motion to dismiss (ECF No. 39), which

---

316 (6th Cir. 2013) ("Macomb County is a party to this case under the theory that it was [Macomb County Probate Court register] Housey's employer.  Despite the operational overlap between the court and county, Macomb was not Housey's employer.  Circuit and district courts in Michigan receive their funding from the locality they serve.  Although ostensibly separate, in practice, counties and cities compliment and supplement the operation of the courts in their jurisdiction. . . . The overlap and integration of operations might give the appearance that Macomb County employed Housey; it did not.  The Michigan Supreme Court squarely addressed whether or not a county may employ court personnel in its jurisdiction.  The Michigan Supreme Court stated that despite the unique relationship between a court and its funding unit, the judiciary was the employer of court personnel, not the county."); *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 763 (6th Cir. 2010) ("Consequently, just as the Michigan Supreme Court is an arm of the state, so is its Nineteenth District Court"); *Stewart v. Cnty. of Saginaw*, 736 F. Supp. 3d 527, 546 n7 (E.D. Mich. 2024).  *But see, Turppa v. Cnty. of Montmorency*, 710 F. Supp. 2d 619, 621 (E.D. Mich. 2010) ("Several courts have previously considered whether the Michigan trial courts' administrative employees work for the court or the county.  Each of those courts have held that an employee of a Michigan state court, whether a probate, circuit, or district court, is an employee of the court and not an employee of the county where the court is located.  However, those decisions are not binding authority and do not foreclose consideration of the specific issues and factual circumstances presented in this case.  Defendant may be, as Plaintiff contends, her "employer" within the meaning of the ADEA and ELCRA.  On the other hand, the Montmorency County Probate Court or the State of Michigan could be her "employers" too.  There is simply insufficient information in the record to make that determination at this time."); *Stewart v. Cnty. of Saginaw*, 736 F. Supp. 3d 527, 549 (E.D. Mich. 2024) ("In sum, despite Michigan Supreme Court precedent that the state legislature cannot classify state court staff as employees of the county or city the court is located in, such municipalities, in certain factual circumstances, may properly be considered a 'co-employer' of a plaintiff pursuing employment discrimination claims.").  Any dispositive motion filed by Wayne County shall thoroughly address these issues.

has been fully briefed (ECF Nos. 45, 46, 48).[2]

The Court finds that oral argument will not aid it in resolving the motion, and declines to hold a hearing.  *See* E.D. Mich. LR 7.1(f)(2).

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **(ECF No. 39)** be **GRANTED IN PART AND DENIED IN PART**.

## II.    REPORT

### A.    Background[3]

Stewart, a sixty-year-old African American woman, began her employment with the WCPC in 2004.  (ECF No. 1, PageID.4).  In January 2019, Stewart was promoted to the position of a Training Coordinator in the WCPC's Human Resources ("HR") Department, and was promoted again to the position of HR Assistant in October 2019.  (*Id.*, PageID.5).  From this point on, however, Stewart alleges that Defendants engaged in a series of discriminatory employment practices based on her race, color, and age.

For instance, Stewart raises discrimination claims that she was forced to work in a capacity above her job classification for extended periods of time "without an increase in

---

[2] Defendants filed a motion to strike Stewart's unauthorized sur-response.  (ECF No. 49).  While Stewart should have first obtained leave of court, given her *pro se* status, the Court hereby **DENIES** Defendants' motion to strike **(ECF No. 49)** and will consider her sur-reply.  In any case, as discussed below, the Court's recommendation is based on whether Stewart's complaint alleges sufficient factual allegations to state a plausible claim for relief.

[3] In their motion to dismiss, Defendants' cite to the allegations and exhibits contained in both Stewart's initial complaint (ECF No. 1) and amended complaint (ECF No. 37) in discussing the factual basis for her claims and in arguing for dismissal.  Consistent with that approach, while Stewart's amended complaint in ECF No. 37 is the operative complaint, the Court will sometimes cite to Stewart's initial complaint to provide additional context when explaining her claims.

pay or interim promotion," even though court employees of other races were given "an increase in salary to perform higher classification work." (ECF No. 37, PageID.241). Specifically, Stewart alleges that, in December 2019, her boss, HR Manager Alana Benson, "went on medical leave" and "missed a substantial amount of time from work." (*Id.*, PageID.243). During Benson's absence, defendant April Maycock, the Probate Register, allegedly "forced [Stewart] to work as the sole employee in the [HR Department] approximately 12 weeks, performing all job duties . . . including the managers' responsibilities without proper compensation or overtime." (*Id.*). Stewart claims that she had "to perform jobs above [her] classification approximately 2 additional months accumulated in weeks and days at a time without proper pay." (*Id.*).

Stewart alleges that, in February 2022, HR Manager Benson eventually resigned, and Stewart was "forced again" by the Court, Maycock, and Chief Judge Freddie G. Burton "to perform all tasks in the HR [Department] for approximately 5 weeks without an increase in salary," but they "allowed overtime for those 5 weeks but not for the first 12 weeks" that she had worked while Benson was on medical leave. (*Id.*). In sum, Stewart alleges that she was never properly compensated for "working a total of 17 weeks performing high job responsibilities and working alone in the HR [Department]," and instead, in April 2022, Maycock humiliated her by e-mailing her a $15.00 Panera Gift card as "[t]hanks for holding down the fort!" (ECF No.1, PageID.10-11). Stewart alleges that she was discriminated against because "younger and or other race employees [] were given an increased salary while performing higher job duties in the absence of the Manager," including, for example, employees April Maycock, Janet Witte, Hing Wong, Alana

Benson, and Rebecca Seguin.  (ECF No. 37, PageID.244).

Stewart also raises discrimination claims that she was passed over for promotions or other positions based on her age, race, and color, despite having the most experience working at the probate court.  She alleges that she applied for a position as a Liaison in the Behavioral Health Unit ("BHU"), and, in October 2021, was interviewed by Maycock, Judge Burton, and Benson for the position.  (*Id.*, PageID.242).  Stewart alleges that she was "passed over" for the position even though she was the "most qualified with WCPC experience," while employees of other races typically received promotions and substantial salary increases specifically "because they had WCPC experience." (*Id.*).  Instead, Stewart alleges that Maycock and Judge Burton selected Kristina Morgan, "an external younger fair/light complexion candidate with less Probate Court experience," for the position.  (*Id.*, PageID.247; ECF No. 1, PageID.7).

Similarly, Stewart alleges that she (and other protected individuals) were not given a fair opportunity to apply and interview for certain positions based on race and age.  For instance, Stewart alleges that, in August 2021, she applied for "the position of Courtroom Coordinator to Chief Judge Freddie G. Burton," but that defendants never provided her with "interview dates or any information about the status of the position."  (ECF No. 37, PageID.244).  She applied again in September and October of 2022, but defendants similarly "ignored" her applications.  (ECF No. 1, PageID.11-13).  Later, on June 15, 2023, Stewart discovered through the "CE Minutes" that "Judge Burton hired Courtroom Coordinator Loren Buchanan," who was a "younger external candidate," and that Judge Burton did so "without interviewing internal candidates" who had more experience and

were more qualified for the job.  (ECF No. 37, PageID.244; ECF No. 1, PageID.7).

Similarly, Stewart alleges that she was discriminated against again in June 2023 when it

was announced that a "younger, Caucasian employee was appointed to a newly created

exempt position, titled BHU Technical Coordinator," but she could not apply for the

position because it was never posted.  (ECF No. 1, PageID.12).

  Stewart also raises discrimination claims that she was demoted to a lower position

based on her race/age, and in retaliation for complaining about not being properly paid in

her position as the HR Assistant.  Specifically, Stewart alleges that, in May 2022, when

she recognized that Maycock and WCPC "would never properly compensate [her] for the

job responsibilities the Court required [her] to perform above her classification," she

"request[ed] a new position as [a court clerk II in] Judge Paolucci['s] courtroom."  (*Id.*,

PageID.5).  However, on June 3, 2022, HR Manager Rebecca Craigmile and Maycock told

Stewart that her salary would be reduced by $14,000 if she left her position as an HR

Assistant for the Court Clerk II position.  (*Id.*, PageID.6).  Three days later, on June 6,

2022, Craigmile and Maycock met with Stewart to inform her that "she would be

demoted/reassigned to BHU Administrative Assistant position" instead, which defendants

stated was "created just for [Stewart] with a 7% pay cut," and that she would be "placed

on a six-month probationary period in the new role."  (*Id.*, PageID.6).  Stewart alleges that

Craigmile and Maycock "had no obligation to demote, reduce the salary or place [her] on

probation for six months."  (*Id.*, PageID.9).

  Stewart alleges that, because of the terms of this demotion to a position different

from the one she sought, she "requested to continue her service as the H.R. Administrative

Assistant," but Maycock and Craigmile said "No," told Stewart she "had to accept the position" as the BHU Administrative Assistant, and stated that she "could no longer serve as Administrative Assistant for [] HR . . ."  (ECF No. 37, PageID.245).  She alleges that this demotion happened "[e]ven after [Stewart] requested to stay" in the HR Department "since there were now three employees" instead of "just one."  (ECF No. 1, PageID.6).  She alleges that she "did not volunteer to demote" to this position, but rather "[t]his was Retaliation and a <u>forced</u> demotion" by Maycock, Craigmile, and Judge Burton "for complaining about not being properly paid, while serving in the Human Resources Department."  (ECF No. 37, PageID.245) (emphasis in original).

Stewart alleges that, on June 13, 2022, she was officially "demoted" to the BHU Administrative Assistant position and received a 7% decrease in salary.  (*Id.*).  She alleges that she was discriminated against because "they normally reduce Caucasian employees' salaries by 3.5% . . . when they request a demotion and never have WCPC force [sic] or created another position with less pay."  (ECF No. 1, PageID.7).

Finally, Stewart raises claims of retaliatory workplace harassment "for filing a complaint with the EEOC."  (ECF No. 37, PageID.245).  She alleges that, in January 2024, she was "still being retaliated against and victimized by management" when they made "false allegations to put Reprimands in [her] personnel file which would lead to termination."  (*Id.*, PageID.246).  Stewart alleges that Craigmile and Morgan investigated a complaint against her made by BHU Clerk Erica Esperanza, and issued Stewart a written reprimand even after she explained that the allegations were false.  (*Id.*).  Stewart alleges that, in February 2024, she "reached out by email" to Judge Burton requesting help, but

received a response from attorney George Pitchford who, "speaking on behalf of the Court per Chief Judge," supported the reprimand and threatened Stewart with termination "through various email communication[s]" and "add[ed] false information to [Stewart's] file" that she "wasn't meeting deadlines on projects which isn't true . . ." (*Id.*, PageID.247). Stewart alleges that these actions were taken against her "for filing a complaint with the EEOC" in November 2022. (*Id.*, PageID.245).

Defendants now move for dismissal of Stewart's claims against them, arguing that Stewart fails to state a claim for relief.

## B.    Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements.  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).  Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

## C.    Analysis

In their motion, Defendants argue that Stewart's claims against them should be dismissed because she failed to plead sufficient allegations of any employment discrimination violations.  (ECF No. 39).  The Court will address Defendants' arguments for dismissal, in turn.

*Claims Based on Failure to Promote / Hire for New Positions*

     i.  <u>Behavioral Health Unit ("BHU") Liaison</u>

Defendants argue that Stewart's claim for failure to promote her to the BHU Liaison position should be dismissed because she "cannot establish that she was denied the [] position due to her race." (ECF No. 39, PageID.270). To establish an employment discrimination claim based on a failure to promote, Stewart must demonstrate that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). "To satisfy the fourth prong of the *prima facie* burden in a failure to promote case, it is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications." *Id.* at 242.

Importantly, however, Stewart "is not required to state a *prima facie* case to survive a Motion to Dismiss, even though it may be helpful to [her] case." *Whitehead v. Sterling Jewelers, Inc.*, 648 F. Supp. 3d 951, 959 (W.D. Tenn. 2023) (citing *Davis v. Prison Health Servs.*, 679 F.3d 433, 439-40 (6th Cir. 2012)). Instead, she "need only satisfy the plausibility standard of *Twombly*." *Menge v. City of Highland Park*, No. 21-10152, 2022 WL 54544, at *8 (E.D. Mich. Jan. 5, 2022); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."). Viewed liberally, Stewart's complaint pleads

sufficient factual allegations to raise a plausible claim for failure to promote based on age and color.

As to the first prong of a *prima facie* case, Stewart alleges membership in a protected class as a 60-year-old African American with "dark complexion." (ECF No. 1, PageID.7).

As to the second prong, Stewart alleges that she applied for the position as the BHU Liaison, and that she was qualified for the position. Stewart alleges that she was both the "most qualified with WCPC experience" for the position as an employee of the court since 2004, and that she was actually qualified for the position as she had been interviewed and considered for the position in October 2021. (ECF No. 37, PageID.242; *see also* ECF No. 1, PageID.38 (e-mail stating Stewart was picked as one of three final candidates)). Moreover, Stewart alleges that she single-handedly performed "all job duties," including "the managers' responsibilities," for the entire HR department for 17 weeks by herself, which allows for the reasonable inference that she was qualified for the BHU position. (ECF No. 37, PageID.243). While Defendants argue that Stewart "fails to provide any evidence that she . . . [was] qualified for the position," at the motion to dismiss stage, Stewart is not required to supply such "evidence"; her complaint need only contain sufficient factual matter, accepted as true, to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

Stewart satisfies the third prong, as she alleges she was interviewed, considered, but ultimately not selected for the position as BHU Liaison.

Finally, as to the fourth prong, Stewart plausibly alleges that she was more qualified than Kristina Morgan, the person ultimately selected for the position of BHU Liaison,

11

because Morgan was an "external" candidate with "less Probate Court experience," while Stewart was an internal candidate with over 15 years' experience working at the WCPC. (ECF No. 1, PageID.7; ECF No. 37, PageID.242).

To the extent Defendants argue that the position did not go to someone outside the protected class because "the successful candidate for that position is [Stewart's] current supervisor, Kristina Morgan, [who] is an African American female," such argument overlooks that Stewart's discrimination claim for failure to promote for the BHU Liaison position is based on age[4] and color, as she alleges that Defendants selected a "younger fair/light complexion" candidate.  (ECF No. 1, PageID.7); *see Benitez v. Tyson Fresh Meats, Inc.*, No. 3:18-CV-00491, 2022 WL 1283087 (M.D. Tenn. Apr. 28, 2022) ("Courts are clear that a color discrimination claim is separate from a race or national origin discrimination claim.  [C]olor discrimination is distinct from race discrimination in that the former arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual.") (quotations omitted).

Accordingly, Defendants are not entitled to dismissal of Stewart's discrimination claims for failure to promote her to the BHU Liaison position based on age and color.

ii.  Courtroom Coordinator

Stewart alleges that she was not hired (or even considered) for the Courtroom

---

[4] Defendants do not address Stewart's claim that she was passed over for the BHU Liaison position based on her age, and so they are not entitled to dismissal on that claim.

Coordinator position because of her age.  Defendants argue that Stewart's claim that "she was improperly denied an interview" for the position of Courtroom Coordinator must be dismissed because the WCPC Employee Handbook provides that the "Chief Judge has full discretion as to appointees made to exempt positions."  (ECF No. 39, PageID.275).  But that argument is flawed because Stewart's claim is controlled by the salient labor laws, not the WCPC Employee Handbook.  Indeed, it should go without saying that an employee handbook allowing for "full discretion" in hiring decisions does not make it lawful for an employer to discriminate against employees in protected classes when making those decisions, as Stewart alleges happened here.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's age." *Flowers v. WestRock Servs.*, Inc., 979 F.3d 1127, 1130 (6th Cir. 2020) (quoting 29 U.S.C. § 623(a)(1)).  Where a claim of age discrimination is based on circumstantial evidence, it is analyzed under the three-step *McDonnell Douglas* framework. *Id.*  To establish a *prima facie* case, a plaintiff must show that: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a younger worker.  *Id.*  A decision not to hire "is considered an adverse employment action under the ADEA." *Id.* at 1130-31.

Here, Stewart alleges sufficient facts to state a claim of discrimination under the ADEA, as she alleges: (1) she was over 40 years old; (2) she applied for the job in August

2021, September 2022, and October 2022, but was not hired, much less given an interview or notifications; (3) she was qualified for the job based on being an "internal" candidate with many years of experience working at the WCPC and handling manager-level responsibilities in the HR Department; and (4) Loren Buchanan, a "younger" external candidate, was hired instead.  (ECF No. 37, PageID.244; ECF No. 1, PageID.7, 11-13).

To the extent Defendants dispute that Stewart was qualified for the position, that issue is more appropriately addressed at the summary judgment stage, and not on a motion to dismiss.  *See Menge*, 2022 WL 54544, at *8 (stating plaintiff "need only satisfy the plausibility standard of *Twombly*" to survive a motion to dismiss on an employment discrimination claim).

Accordingly, Defendants are not entitled to dismissal on Stewart's claim that she was not hired (or considered) for the Courtroom Coordinator position based on her age.

### iii. BHU Technical Coordinator

The above analyses is different with respect to Stewart's claim that "Chief Judge Burton promoted his court clerk Shereef Nowier to BHU Technical Coordinator without posting the position." (ECF No. 37).  Stewart fails to allege any facts from which the Court could find that the reason she was not hired or considered for the BHU Technical Coordinator position was due to her age or membership in a protected class.  On the contrary, Stewart alleges that Judge Burton "created" the position of BHU Technical Coordinator specifically for his court clerk, Shereef Nowier, "without posting the position" for any other employee.  (ECF No. 37, PageID.244; ECF No. 1, PageID.12).  Having failed to allege any facts to support a claim of unlawful discrimination, Defendants are entitled

to dismissal of Stewart's failure-to-hire claim for the BHU Technical Coordinator position.

*Claims Based on Disparate Treatment in Compensation*

Defendants argue that Stewart's claim that she was not properly compensated for working above her classification while she was an HR Administrative Assistant, unlike younger employees of other races, should be dismissed for failure to state a claim. That argument lacks merit.

To establish a *prima facie* case of discrimination based on disparate treatment, Stewart must show that (1) she is a member of a protected group; (2) that she was qualified for the position at issue; and (3) that she was treated differently than comparable employees outside of the protected class. *Dunlap v. Tennessee Valley Auth.*, 519 F.3d 626, 630 (6th Cir. 2008). Viewed liberally, Stewart's complaint contains sufficient allegations to raise a plausible claim of disparate treatment in compensation for work performed.

Stewart satisfies the first prong of a *prima facie* case by alleging membership in a protected group based on her age (60 years' old) and race (African American). She satisfies the second prong by alleging that she was qualified for her position as an HR Assistant because she was promoted to that position, and in December 2019, she was "forced [] to work as the sole employee" in the HR Department for 17 weeks, "performing all job duties . . . including managers' responsibilities." (ECF No. 37, PageID.243). Stewart also alleges that, in April 2022, Maycock e-mailed her a $15.00 Panera Gift card as appreciation for successfully "holding down the fort" in the HR Department. (ECF No. 1, PageID.10).

As to the third prong, Stewart's complaint raises plausible allegations that she was treated differently than other employees of a younger and/or different race when she did

not receive increased compensation for higher classification work that she performed.  For instance, Stewart alleges that Rebecca Seguin, a "younger" and "White" employee working in the HR Department as an "Administrative Assistant," was allegedly "given an increased salary while performing higher job duties in the absence of a Manager."  (ECF No. 37, PageID.243-44).  Stewart also appears to allege that Seguin was offered a promotion "to be the HR Assistant Manager" based on her performance of higher job duties, but when Seguin declined the offer, Defendants "changed [Seguin's] job title to Sr. Human Resources Generalist to increase the salary," which Seguin then accepted.  (*Id.*, PageID.249; *see also* ECF No. 1, PageID.28 (Stewart's letter to Maycock and Craigmile, stating "Prior to the new HR Manager being hired, the Probate Register offered the HR Manager/Assistant Manager position to an employee who had no degree and hadn't worked in HR.  The employee declined after they asked me if I could support them in this role . . . This was a shock to me, very humiliating to be over looked and disregarded after I had successfully performed the job without extra pay or out of class pay so many times.")).  In contrast, Stewart alleges that she was not offered overtime pay at all for the first 12 weeks, that she was only given overtime pay for the second 5-week stretch and a $15.00 Panera gift card, and that she was never offered a promotion or temporary increase in salary.

While the exact details of Stewart's claim remain to be fleshed out during discovery,[5] Stewart has alleged sufficient facts at this stage to state a plausible claim that

---

[5] For instance, Defendants argue that "Plaintiff was not a union employee and was not subject to job classifications, or class pay," and that she was "an exempt employee."  (ECF No. 39, PageID.273).  However, Stewart alleges that "other races are given an increase in salary to perform

she was treated differently from a younger white employee with respect to receiving additional compensation for increased work in the absence of a manager.  *See Menge*, 2022 WL 54544, at *8 (stating plaintiff "need only satisfy the plausibility standard of *Twombly*" to survive a motion to dismiss on an employment discrimination claim).

Accordingly, Defendants are not entitled to dismissal of Stewart's claim of disparate treatment in compensation for work performed above her job classification based on her age and race.

*Claims Based on Demotion and Reduction in Pay*

Defendants argue that Stewart failed to state a plausible claim that she was discriminated against based on her race when she was demoted to the position of BHU Administrative Assistant, and given a 7% pay cut.  (ECF No. 39, PageID.278).  This argument also lacks merit.

To establish a *prima facie* case of discrimination, plaintiff must show that (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably.  *Smith v. City of Toledo, Ohio*, 13 F.4th 508, 515 (6th Cir. 2021).

Defendants do not dispute that Stewart is a member of a protected class, or that, for purposes of their motion, she was qualified for her job.  (ECF No. 39, PageID.279).  Rather,

---

higher classification work," including Seguin, who Stewart alleges worked in the same HR Department.  Moreover, Stewart alleges that she was not given overtime pay at all for 12 weeks, but allowed overtime pay for 5 weeks.

they argue that (1) she did not suffer an "adverse employment action" because "[h]er request for demotion was completely voluntary on her part"; and (2) she cannot identify a similarly situated employee who was treated more favorably.  The Court disagrees on both issues.

First, as to an adverse employment action, Stewart's complaint clearly alleges that she specifically requested a new position as Court Clerk II in Judge Paolucci's courtroom, and "did not volunteer to [be] demote[d] to BHU Administrative Assistant," but that Craigmile and Maycock told her she would be "demoted/reassigned to BHU Administrative position."  (ECF No. 1, PageID.5-6; ECF No. 37, PageID.245 (Stewart alleging that she specifically "requested to continue her service as H.R. Administrative Assistant," but that Maycock and Craigmile told her "No," she "had to accept the position" of BHU Administrative Assistant, and that she "could no longer serve" as HR Assistant)).  Accepting Stewart's allegations as true, Defendants' argument that she voluntarily accepted a demotion to BHU Administrative Assistant lacks merit.

Second, as to a sufficiently similar comparator, Defendants argue that, to be deemed similarly situated, the individuals "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," quoting the Sixth Circuit's decision in *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 894 (6th Cir. 2020).  But the next sentence of *Miles* states that "[f]ailure to satisfy these requirements, however, does not automatically destroy comparator status and plaintiffs need not show an exact correlation between

18

themselves and others similarly situated," but rather must "show that she is similar to her proposed comparator in 'all relevant respects.'" *Id.* at 893.  Moreover, while Stewart may need to provide evidence of a sufficiently similar comparator to ultimately prevail on her *prima facie* case, to survive the instant motion to dismiss, she need only allege sufficient facts to raise a *plausible* claim of discrimination. *See Menge*, 2022 WL 54544, at *8. Stewart does so here, as she alleges that Jane Witte, a white employee, was demoted from a position as a court administrator to a "created position" with "less than a 7% wage decrease," and then later reappointed to her old position "with a salary increase." (ECF No. 37, PageID.249).  In contrast, Stewart alleges that she was demoted to a "created position" with "a 7% pay cut," "placed on a six-month probationary period in the new role," and told she could no longer serve in her old position as HR Assistant.  (ECF No. 1, PageID.6; ECF No. 37, PageID.245).

Stewart also asserts a claim that her challenged June 2022 demotion was retaliatory in nature.  To establish a *prima facie* case of unlawful retaliation, Stewart must show that: (1) she engaged in protected activity; (2) defendants knew about her exercise of the protected activity; (3) defendants thereafter took a materially adverse action against her or subjected her to severe and pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the materially adverse action.  *Evans v. Prospect Airport Servs., Inc.*, 286 F. App'x 889, 894 (6th Cir. 2008) (Title VII); *see Spengler v. Worthington Cylinders*, 615 F.3d 481, 491-92 (6th Cir. 2010) (ADEA).

In moving to dismiss this claim, Defendants misconstrue Stewart's claim.  They incorrectly assume her protected activity was the filing of her November 16, 2022 EEOC

complaint, and they only challenge the "causal connection" prong, arguing that the claim fails because Stewart filed her EEOC complaint "almost six months *after* she requested her demotion" and she "has not alleged that there was any other 'complaint' that she filed that would prompt some form of retaliation."  (ECF No. 39, PageID.276-77; ECF No. 40, PageID.598).  Although, as discussed in the next section, Stewart does allege that she suffered "harassment" on account of her filing the EEOC charge (ECF No. 37, PageID.241-42, 245) (alleging that she was "Retaliated against, bullied, and victimized for filing a complaint with the EEOC"), her *retaliatory demotion* claim has nothing to do with the EEOC charge.  Rather, Stewart's allegation that her forced demotion and decrease in pay "was Retaliation . . . for complaining about not being properly paid, while serving in the Human Resources Department" appears to relate to the *May 3, 2022* letter she wrote to Maycock and Craigmile, in which she complained about how she was mistreated and undervalued by managers, how she was expected to work without "any help or extra compensation for as long as 12 weeks," and how she could no longer stay in the HR Department, and requested a voluntary demotion to serve as Court Clerk II to Judge Paolucci.  (ECF No. 1, PageID.28-29; ECF No. 37, PageID.245; *see also supra* at 6-7).  Stewart claims that about a month later, on *June 13, 2022*, Defendants demoted her to a position she did not request and cut her pay.  (ECF No. 27, PageID.245).  Those alleged facts adequately support each of the elements of her retaliatory demotion claim.

Accordingly, Defendants are not entitled to dismissal of Stewart's discrimination and retaliation claims related to her demotion to BHU Administrative Assistant and reduction in pay in that role.

*Claims of Retaliation for Filing EEOC Complaint*

Finally, Defendants argue that Stewart's claims related to retaliatory conduct from Craigmile, Morgan, and Pitchford following Stewart's filing of the EEOC complaint should be dismissed for failure to state a claim.  (ECF No. 39, PageID.277-78).   As explained above, to establish a *prima facie* case of unlawful retaliation, Stewart must show that: (1) she engaged in protected activity; (2) defendants knew about her exercise of the protected activity; (3) defendants thereafter took a materially adverse action against her or subjected her to severe and pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the materially adverse action.  *Evans,* 286 F. App'x at 894 (Title VII); *Spengler*, 615 F.3d at 491-92 (ADEA).

Viewed liberally, Stewart alleges a plausible claim of retaliation based on her filing of the EEOC complaint.   She alleges that (1) she filed an EEOC complaint against Defendants on November 16, 2022; (2) Defendants knew about her EEOC complaint against them; (3) Defendants issued false reprimands and information into her personnel file to get her fired; and (4) these acts occurred after, and on account of the fact that she filed her EEOC complaint.  (ECF No. 37, PageID.245-47; ECF No. 36, PageID.232-38; *see also supra* at 6-7).

Defendants' arguments contesting the truth of Stewart's allegations or asserting that she "offers nothing but conclusory statements and fails to provide the proof of the statements that she claims exists" are both off-base and incorrect.  (ECF No. 39, PageID.278).  The law is clear that at the motion to dismiss stage, a plaintiff merely needs to plead sufficient factual matter, which, if accepted as true, states a claim that is plausible

on its face. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  Moreover, Stewart's allegations are not wholly "conclusory" or devoid of factual detail.  Rather, she specifically alleges that the Defendants made false allegations against her as reflected in specific written "Reprimands" she received.  (ECF No. 37, PageID.246).  She also alleges that in February 2024, she "reached out by email" to Judge Burton requesting help, but received a response from attorney George Pitchford who, "speaking on behalf of the Court per Chief Judge," "add[ed] false information to [Stewart's] file" that she "wasn't meeting deadlines on projects which isn't true . . ."  (*Id.*, PageID.247).  Stewart specifically alleges that these actions were taken against her "for filing a complaint with the EEOC" in November 2022. (*Id.*, PageID.245).  While it remains to be seen whether Stewart can support these allegations with proper evidence after discovery, they are sufficient to overcome Defendants' instant motion to dismiss.

Accordingly, Defendants have failed to show that they are entitled to dismissal of her claims that she was retaliated against for filing an EEOC complaint.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' motion to dismiss Stewart's complaint **(ECF No. 29)** be **GRANTED IN PART** as to her discrimination claim concerning the BHU Technical Coordinator position, but otherwise **DENIED IN PART** as to Stewart's remaining claims.

Dated: February 10, 2025                         s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge

22

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections that raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 10, 2025.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager